UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SEYI-AMERICA, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3-13-0461 |
| STAMTEC, INC., | ) ) | Judge Sharp |
| Defendant. | ) ) | |

## MEMORANDUM

Apparently, the mechanical press industry is highly competitive, and, if this case is any indication, the battle to retain market shares by main competitors in the business ain't that pretty at all. So far, a dispute between Plaintiff Seyi-America, Inc. and Defendant Stamtec, Inc. involving a mutual salesman has led to four lawsuits in two states, the last of which was filed here. Stamtec now moves to dismiss or stay this case under the *Colorado River* doctrine. In the event that request is denied, Stamtec requests that the action be transferred to the Eastern District of Tennessee, or that Seyi be required to provide a more definite statement as to the basis for venue in this district.

**I.**

The opening salvo in this ongoing skirmish was fired on December 22, 2010, when Seyi filed a Complaint in the Los Angeles Superior Court against Andrew Chase – the mutual salesman, who at one time worked for Seyi – and his solely owned corporation, Stamping Solutions, Inc. In an Amended Complaint, Seyi alleged that Chase stole its trade secrets and shared them with a competitor, with whom Chase began a relationship after leaving Seyi.

Though unnamed, the competitor is hardly an enigma: it is Stamtec. Seyi also named 50

1

John Doe defendants in the California state court action, and brought state law claims for breach of contract, fraud, misrepresentation (both intentional and negligent), breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, misappropriation of trade secrets, unfair competition, tortious interference with a prospective economic advantage, unjust enrichment, and conversion. That case is currently pending, but this Court is informed that it is set for jury trial early next year, with the only outstanding matter being the production of documents in a Tennessee state court, the second theater of activity.

During the initial California campaign, Seyi conducted discovery and took Chase's deposition. According to Stamtec, however, that discovery was not a simple sortie, but a blitzkrieg strategically targeted to obtain unfettered access to Stamtec's confidential and proprietary information. Sensing a potential hotspot, Stamtec chose to cross swords with Seyi in the California state action by filing a motion for a protective order.

According to Stamtec, its motion for a protective order was granted, and the state court subsequently entered an order indicating that Stamtec had complied with the order. Nevertheless, Seyi took counter-measures by twice-causing the state court to issue subpoenas *duces tecum* for some 90 categories of Stamtec documents.

The subpoenas were domesticated by the Circuit Court of Coffee County, Tennessee. Stamtec claims it initially sought to broker a truce by offering to informally produce 40,000 documents to Seyi with financial information redacted, but Seyi rejected the entreaty. With no armistice in the offing, Stamtec, allegedly bombarded and besieged by the volume and sensitivity of the documents requested, filed a motion to quash or modify the subpoenas. Even though Stamtec claims to have received most of the relief it requested, that case, too, remains pending.

2

Stamtec next launched a counter-attack by filing a complaint against Seyi in the Eastern District of Tennessee. In that case, which also remains pending, Stamtec alleges that Seyi's conduct in relation to securing the subpoenas *duces tecum* in the California Court amounted to abuse of process under both Tennessee and California law. More specifically, Stamtec alleges that "Seyi's pattern is to use litigation for the purpose of conducting industrial espionage [by] using sharp tactics," and then "pounc[ing] on its unsuspecting adversary for purpose of obtaining an unfair advantage." (Docket No. 5-4, E.D. Tenn. Comp. ¶ 23).

The front then switched to this Court when Seyi sued Stamtec for misappropriation of trade secrets in violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. ¶ 47-25-101 *et seq.,* interference with business relations, and conspiracy. Seyi insists that this, the fourth and last case for now, is nothing more than a retaliatory strike by Seyi because of Stamtec's refusal to transfer the Eastern District action to this Court in exchange for acceptance of service.

As noted, Stamtec seeks dismissal or a stay of this action, or, absent that, a more definite statement, or a transfer of the case to the Eastern District of Tennessee. Having fully considered the arguments of the parties and the present record, the Court finds that *Colorado River* abstention is unwarranted, but also that, for the convenience of the parties and witnesses, and in the interest of justice, this case should be transferred. Accordingly, the Court will cut orders transferring this litigation to the Eastern District where the troops can regroup, marshal forces, and continue fighting what has every indication of becoming a battle royal.

## II.

In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), the Supreme Court held that, despite the "virtually unflagging obligation of the federal courts to exercise

3

the jurisdiction given them," federal courts can abstain from hearing a case in favor of concurrent state proceedings involving the same subject matter. This abstention, however, "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and is justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813.

"The Supreme Court and [the Sixth] Circuit have identified a number of factors which district courts must consider when determining whether abstention is appropriate under the Colorado River doctrine." Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 886 (6th Cir. 2002). "The list of relevant factors includes:

> '(1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.'"

Id. (quoting, PaineWebber, Inc. v. Cohen, 276 F.3d 197, 206 (6th Cir. 2001)).

However, "[b]efore the Colorado River doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998). In this case, after considering the arguments of the parties and reviewing the Complaint in this case and the Amended Complaint in the California case, the Court finds that the actions are not parallel, and thus the Court does not reach the factors utilized to consider the appropriateness of Colorado River abstention. See, Warner v. Greenebaum, Doll & McDonald, 104 Fed. App'x 493, 496 (6th Cir. 2004) ("In order to apply Colorado River's abstention doctrine, a court must determine that the state and federal proceedings are parallel"); Acosta v.

4

James A. Gustino, P.A., 2012 WL 2017337 at *2 (11th Cir. June 6, 2012) ("If the federal and state proceedings are not parallel, then the Colorado River doctrine does not apply"; TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005) (same).

"There is no clear test for deciding whether two cases contain substantially similar parties and issues." Acosta, 2012 WL 2017337 at *2. However, it is clear that "[t]he lawsuits need not be identical to be considered parallel," TruServ Corp., 419 F.3d at 592, and, indeed, there is "no requirement that the parties in the state court proceedings be identical to those in the federal case." Bates v. Van Buren Tp., 122 Fed. App'x 803, 806 (6th Cir. 2004) (citing, Romine, 160 F.3d at 340.

Nevertheless, for cases to be considered parallel, "substantially the same parties [must be] contemporaneously litigating substantially the same issues," and "[t]he critical question is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" Huon v. Johnson & Bell, Ltd., 657 F.3d 641, 646 (7th Cir. 2011). Importantly, "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." Chellman-Shelton v. Glenn, 197 Fed. App'x 392, 394 (6th Cir. 2006) (citing, TruServ Corp., 419 F.3d at 592)).

Here, there is indeed a substantial doubt that the California action will offer a complete resolution between the parties, most fundamentally because Stamtec is not sued in the California case, and the causes of action are different. True, and as Stamtec argues, both this action and the California action turn, to a great extent, on whether Chase, the alleged tortfeasor, stole Seyi's protected information. Stamtec then posits that if Chase is successful in defending the California action, this lawsuit will almost certainly be dismissed on *res judicata* grounds, but that does not

5

seem preordained in light of the fact that the case here contains causes of action not found in the California state action, including violations of Tennessee's Uniform Trade Secrets Act, which may be broader than California's version.

For example, while both state's statutes provide that "'improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy," Tennessee's version expands it to include, not only a breach of duty to maintain secrecy, but also to "limit use." Compare, Tenn. Code Ann. § 47-25-1702(a) with Cal. Civ. Code § 3426.1(1). Further, California's trade secret act defines "trade secret" as "information including a formula, pattern, compilation, program, device, method, technique or process," Civ. Code § 3426.1(d), while Tennessee's version defines "trade secret" as information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan[.]" Tenn. Code Ann. § 47-25-1702(4). See, Gannett Co., Inc. v. Clark Const. Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) (citation omitted) ("'A difference in remedies is a factor counseling denial of a motion to abstain'").

And, what if Chase is unsuccessful, and found to have absconded with confidential items? Certainly Stamtec is not suggesting that it, too, would necessarily be guilty of misappropriation of Stamtec's trade secrets, and automatically liable for Chase's misdeeds. See, Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties").

"Abstention is an "extraordinary and narrow exception" to a court's duty to exercise the jurisdiction conferred on it, "'[o]nly the 'clearest of justifications' will support abstention." RSM

6

Richter, Inc. v. Behr Amer., Inc., 729 F.3d 553, 556 (6th Cir. 2013) (quoting, Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713 (1996)). The Court does not see that justification where the only common party to the two actions is Plaintiff, but neither defendant is a defendant in both cases; where there are different causes of actions asserted in the state and federal actions, some of which may be broader in the federal case; and where it is far from clear that the state case will completely resolve the dispute presently before the Court. Accordingly, the Court will not dismiss or stay this case under the *Colorado River* doctrine.

## III.

Stamtec requests that, in the absence of a stay or dismissal, the Court transfer this action to the Eastern District of Tennessee in accordance with 28 U.S.C. § 1404(a), or, at a minimum, require that Seyi provide a more definitive statement.

## A.

Stamtec first asserts that, in lieu of outright transfer, Seyi should at least be required to provide a more definitive statement as to the basis for venue. Seyi responds that it has met the "short and plain statement" requirement of Fed. R. Civ. P. 8(a), by alleging in the Complaint that jurisdiction is proper, and by citing 28 U.S.C. 1391 which, after all, provides only three possible basis for venue in this diversity case: "(1) Stamtec resides in the district, (2) a substantial part of the events or omissions at issue occurred in the district, or (3) Stamtec is subject to personal jurisdiction in the district." (Docket No. 13 at 17). Further, Seyi contends that "Stamtec admits that it knows that SEYI contends that it is deemed to reside in the Middle District because it is subject to personal jurisdiction in the district." Id.. This supposed admission is based on Stamtec's statement in its brief that "informal discussions between counsel have revealed that Seyi will likely rely upon 28

7

U.S.C. § 1391(c)(2)" (Docket No. 5-1 at 21), which, in turn, is said to be based upon a telephone conference between the lawyers, wherein Seyi's counsel is alleged to have "indicated that to the best of their recollection venue in the Middle District was based on 28 U.S.C. § 1391(c)(2)." (Docket No. 5-1, Rose Aff. ¶ 8).

Even if Seyi is technically correct about the pleading requirements for venue, its gamesmanship has accomplished little, other than to afford everybody, including the Court, the opportunity to write a couple of extra, unnecessary paragraphs. Regardless, the parties appear to agree that venue in this district is at least arguably appropriate, leaving only the question of whether the case should be transferred to the Eastern District where venue clearly exists given Stamtec's location in Manchester, Tennessee.

**B.**

Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision on whether to transfer lies within the broad discretion of the trial court. <u>Bunting ex rel. Gray v. Gray</u>, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" <u>Moore v. Rohm & Haas Co.</u>, 446 F.3d 643, 647 (6th Cir. 2006) (citation omitted). Therefore, in deciding whether the present forum is inconvenient, the Court considers a number of factors, including (1) the location of willing and unwilling witnesses;

8

(2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002).

In support of their request to transfer, Stamtec points out that, not only is it located in Manchester (where its documents can be found), Seyi has an office in Tullahoma, Tennessee, which is also in the Eastern District. Furthermore, Stamtec has identified five material witnesses, two of whom are said to reside in California, and three of whom are said to either reside or be employed in the Eastern District. Stamtec also points out that there is an absence of any specific allegations in the Complaint in this case about the location of events, but the Amended Complaint in the California state court indicates that the acts giving rise to the complaint occurred in Los Angeles County, making venue in that court proper.

In response, Stamtec does not directly challenge those assertions, other than to say that two of the witnesses that are identified by Stamtec may reside in the Middle District, even if they work in the Eastern District. Instead, Stamtec makes much of the fact that Plaintiff's choice of venue should be given deference, and notes that all counsel have offices in, or around, Nashville.

As between the Middle District and the Eastern District, the only locations at issue, it is clear that the Eastern District is more convenient and that it is in the interest of justice that the case be heard there.

Generally, a plaintiff's choice of forum is given "great weight," or accorded "substantial deference," but that choice "is not sacrosanct, . . ., and will not defeat a well-founded motion for change of venue, . . . especially . . . where a plaintiff has little or no connection to the chosen forum." Audi AG and Volkswagon of America, Inc. v. D'Amato , 341 F.Supp.2d 734, 750 (E.D.

9

Mich. 2004). In such circumstances, "the plaintiff's choice is to be afforded less weight than would otherwise be the case," and "[t]he plaintiff's interest decreases even further where the central facts of the lawsuit occurred outside the chosen forum." Amer. Guar & Liab. Ins. Co. v. Crosby Trucking Serv., Inc., 2013 WL 3878953 at *3 (M.D. Tenn. July 26, 2013); accord, Lisenbee v. FedEx Corp., 579 F. Supp.2d 993, 1007 (M.D. Tenn. 2008).

Here, Seyi points to nothing which would suggest any connection between this litigation and this district, other than that counsel for both parties work in the greater Nashville area. However, Section 1404(a) is specifically directed at the "convenience of the parties and witnesses," and "'the convenience and availability of counsel are given little weight in a change of venue motion.'" Cincinnati Ins. Co. v. O'Leary Paint Co., Inc., 676 F.Supp.2d 623, 633 (W.D. Mich. 2009) (citation omitted, collecting cases). Neither of the parties are located in this district– Seyi is located in California but has an office in the Eastern District, and Stamtec is also located in the Eastern District.

As for the identified witnesses, "'often considered to be the most important factor when determining which forum is the most convenient,'" Pace Indus. Pension Fund v. King Soopers, Inc., 2011 WL 1481306 at *2 (M.D. Tenn. April 18, 2009) (citation omitted), that factor, too, counsels in favor of transfer because all four of the Tennessee witnesses are said to work or reside in the Eastern District, and the California witnesses will likely be equally inconvenienced whether they have to travel to this district, or continue east a bit further. Additionally, while the factor related to the location of sources of proof has been discounted "'[i]n the modern era of photocopying, scanning, fax machines, email, overnight delivery services, etc.,'" Oakley v. Remy Intern., Inc., 2010 WL 5203124 at *5 (M.D. Tenn. Feb. 5, 2010) (citation omitted), to the extent it retains weight

it falls on the side favoring transfer since Seyi identifies no sources of proof in this district, but Stamtec's headquarters (and presumably most of its documents) are located in the Eastern District.

Finally, it is within the "rubric of interest of justice" to transfer this case to the Eastern District where a case involving these same parties and same counsel is already pending. Given the existence of that earlier filed case, the Eastern District presumably has some familiarity with this dispute, there is a greater likelihood of coordination where cases are pending in the same district, and a transfer to that district will reduce the number of courts involved in the ongoing dispute between Seyi and Stamtec from four to three.

**IV.**

On the basis of the foregoing, the Court will enter an Order denying Stamtec's Motion to Dismiss or Abstain, but granting its Motion to Transfer to the extent that this case be transferred to the Eastern District of Tennessee.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

11